Good morning. Thank you, Your Honors. May it please the Court, my name is Holly Cooper, and I represent the petitioner in this proceeding, Mr. Ysalas Patino-Ortiz, and I would like to reserve two minutes for rebuttal, Your Honor. Your Honors, Mr. Patino's 2001 removal order was legally invalid for two reasons. First, the 2001 removal proceeding was constitutionally defective. And second, because Mr. Patino vacated the conviction that served as the sole basis for his removal in 2001. The issue before this Court is of utmost importance. Currently around 84% of detained immigrants proceed in pro se, as did Mr. Patino in 2001. The deportation proceedings must comport with the Fifth Amendment and be fundamentally fair, principally for the fact that deportation is safeguarded, because as the Supreme Court has recognized, deportation can take away all that makes life worth living for immigrants. When we go backwards in this case to 2001, the proceedings were fundamentally fair at the time conducted, were they not? No, Your Honor, they were not. Why not? There are three principal reasons why those proceedings were not fundamentally fair. The first one is because this Court has recognized that an immigration judge has an obligation to inform a respondent of any eligibility for relief from removal. In 2001, the sole basis for Mr. Patino's removability was a conviction for possession of methamphetamines. That renders an individual removable from the United States, but nonetheless eligible for a pardon from deportation called cancellation of removal, of which Mr. Patino met the three basic eligibility requirements for that relief. While the judge did recognize that he met the first two prongs, it was the third prong the judge had a concern with and found him to be – that he was ineligible because he aggravated felony conviction. And that felony later set aside in 2001 was an aggravated felony, was it not? Are you referring to the possession of controlled substance or to the transportation? The transportation. Okay. So the transportation was never alleged as part of the notice to appear. However, it appeared in the complaint regarding the possession. Your client, as things stood in 2001, was ineligible for cancellation of removal, was he not? No, Your Honor. In 2001, the laws pertaining to controlled substance is very complicated. I'll grant that. But in 2001, the Board of Immigration appeals – excuse me, in 1991, there was a case called Matter of KVD. Counsel, your time is ticking.  Just tell me. Just succinctly, why not? Tell me why he was eligible for cancellation of removal in 2001. Transportation of a controlled substance is not deportable and it's not an aggravated felony. What about possession of methamphetamine for sale? Possession – he never – there's no conviction. What about possession of methamphetamine? Possession of methamphetamine is deportable but not an aggravated felony in 2001. So when did you go back to the BIA and say, I was not told of my eligibility for cancellation in 2001? When was that raised? That was raised in the third motion to reopen, Your Honor. The first two motions to reopen were brought by former counsel and both of those – neither one of those motions to reopen. And that's why I want to get to what I think is the meat of this case. And let's assume that first two counsel were ineffective and fell below Strickland standards for purposes of discussion. What gets us equitable tolling between 2001 and 2007? What gets us equitable tolling – there's – the primary – In other words, your motions to reopen were late. You're arguing that that's okay because the time should have been tolled equitably. Correct. I'm inclined to believe that you are entitled to equitable tolling for the time that the first counsel was ineffective. But that didn't occur until 2007. So fill in the gap for me between 2001 and 2007. Why do you get – You have to show diligence between that period. Yes. That's the issue. Correct, Your Honor. First of all, to answer Your Honor's question, equitable tolling would apply in this case because of the immigration judge's failure to obtain two appropriate waivers, a waiver of his right to counsel, a waiver of his appellate right. Moreover, he failed to inform of an eligibility for relief. What case do you cite for that giving rise to equitable tolling as opposed to providing a problem with the first – in other words, that might have been a good ground for appeal. Right. But what case do you cite that that gives rise to equitable tolling? The majority of this Court's cases granted deal with ineffective assistance of counsel. However, this Court's en banc decision in SOCOP, S-O-C-O-P, decided that an INS officer's misadvice to an immigrant to withdraw his appeal could give rise to equitable tolling. And that was the seminal case in which this Court for the first time decided that equitable tolling could apply to immigration proceedings. Can it apply to an error by the immigration judge? See, normally we would think that what you do with an error by the immigration judge is you appeal it to the BIA. Is there any case that we have that says you get equitable tolling because the judge made a mistake? There is not. The closest we have is SOCOP, which talked about an immigration agent. And because we're dealing with a non-Article III court, I would say that an immigration judge does have some of the equivalency of acting as an agent for the executive branch. And what the Court looked at in SOCOP was not necessarily the rationale underlying with ineffective assistance of counsel. But I think immigration judges arguably, when 84 percent of detained immigrants are appearing in pro se, have a very high duty, as this Court has recognized in Aguiman, as well as other precedents. I recognize that the judges do have a duty to obtain an appropriate waiver of their right to counsel, of their appellate rights, as well as to inform them of relief. And where they don't do that. Did the second or third motions to reopen raise due process? The third motion did. It's very confused how many motions there were. But the third one. The second is exactly the same as the first. Exactly. We did raise due process concerns, Your Honor, with the proceedings. But the second didn't? The second did not. Can I take you backwards to something you said at the beginning, to make sure I understand it? Are you saying that the IJ's advice at the first hearing, that your client was not eligible for cancellation of removal, was wrong? Correct. It was wrong because transportation of a controlled substance. This Court, four months prior, six months prior, in Rivera-Sanchez, sitting in Banque, had found that 11360, a statute with identical language to 11379, was a divisible statute and was not an aggravated felony. Moreover, the only ‑‑ there's no evidence of a conviction in this record. Put that aside for a second. Now, when do you first raise that argument in your motions to reopen? Is it the third motion to reopen? The third. We brought the third motion. Right. And we argue that the first two don't count. They're not ‑‑ we're not numerically barred because the first two motions were brought in effectively. But you'd be time‑barred. You'd be time‑barred in the absence of equitable, even on the first one, you would be time‑barred in the absence of some sort of equitable tolling, correct? No. We have an additional argument. The additional argument is that because he vacated his conviction that served as the sole basis for his removal, the possession of ‑‑ The Court vacated his conviction. Excuse me. The superior court, the State court vacated his conviction, that this Court has held in a series of like six cases that where the sole basis of removal, you know, with a conviction that serves as the sole basis for removal is vacated, then the execution of that removal order becomes legally invalid. So we would argue ‑‑ sorry, excuse me, Your Honor. I'm just trying to get you to ‑‑ go ahead and finish your thought. Okay. So because the removal order from 2001 is invalid because it's predicated on a vacated conviction, then there is no starting of the 90 days. We have to invalidate that removal order. Can you please answer the question I asked a minute ago about diligence between 2001 and 2007? Okay. Thank you, Your Honor. We would argue that upon the discovery of the ineffective assistance of counsel and the discovery that the judge had comported this unconstitutionally that he acted diligently. Discovery, what we've got is surely he discovered that deportation was a consequence when he was deported in 2001. Correct. But it was unclear from the colloquy with the judge when he waived his ‑‑ Okay. But then he figured it out because he had noticed he was deported. And so my question is from that point until 2007, your client needs to show diligence. Can you help me out with what can he do to show diligence? Right. And what I'm trying to get at is that when the judge advised him of his appellate right, he had understood, it was clear from the record, that he could possibly appeal in Mexico. So it wasn't clear to him. If you look back at the waiver of the appellate right, he says, well, I don't want to appeal here in the United States. Okay, counsel. So here's the question. Just fast forward a little bit because you're talking about what happened in the courtroom. And then he was removed, right? Right. Okay. After he was removed, at that point, the consequences were real clear. And so what did he do between that point and 2007? Well, this court has held that it's ‑‑ We don't want to know what we've held. We want to know what he did. As a matter of fact, what did he do between 2001 and 2007? Tell us. What he did between 2001 and 2007 is unclear from the record. However, upon being put into deportation proceedings in 2007, he retained my office in 2008. Right. No, no. What he definitively learned of it is ‑‑ We all understand that in 2007 or 2008, when he started talking to lawyers, he was very diligent. Right. Trying to figure out whether or not he exercised whatever is required by the law between 2001 and 2007. Is your answer he did nothing? Because that's what I'm surmising from what you're saying, that he did nothing between 2007. I understand your argument that he may not have needed to do anything because you attacked the initial proceedings. But just put that aside for a second. We just need to know if there's anything in this record to suggest that he exercised due diligence between 2001 and 2007. There isn't because he didn't ‑‑ the due diligence is when he had to reasonably suspect that something was concocted. But that's a legal argument. I'm asking if, as a matter of fact, there's nothing in this record to show that he did anything between 2001 and 2007 to try to affect, to try to undo his removal. No, and that's similar to the petitioner in Mejia Hernandez, who also did nothing. Counselor, you're well over your time. Thank you very much. We appreciate it. We'll give you another minute so you can be planning your rebuttal. And we'll hear from opposing counsel in the meantime. Good morning, Your Honors. May it please the Court. Rob Stalzer on behalf of the AG. I want to start, Your Honors, with the question that you just asked. What did the petitioner do when he was removed in 2001? He did a couple of things. He reentered the United States unlawfully. That was an act he took. We don't know when, right? We know it was between 2001 and 2007. We can't narrow it down. Of course we can't. That's the point, right? That's the one concrete thing we do know. What's the one concrete thing? That he reentered unlawfully, Your Honor. But we don't know when, right? We don't know when. Okay. We just know he came back unlawfully. We also know that he didn't engage a lawyer at that time. If he believed there was something after his 2001 removal. Well, he did. I'm sure he did. Engage what in 2007? 2007. When he was re- And we don't know that he just didn't come back in 2007, do we? I don't think we know when his reentry date is, Your Honor. No. Would that change things? What if he didn't come back until 2007, and he immediately engaged a lawyer? It would still be an unlawful reentry, and it would still be untimely because he didn't do anything in the intervening six years. Let me tell you what troubles me about your position when taken to its extreme, and that's not this case, but tell me how we don't get down the slippery slope. Let's assume that he had counsel at the time of the initial action and appealed to the BIA. The BIA turned him down because his conviction was still extant. And then he went into state post-conviction proceedings, and it took him six years to set it aside. Could he then bring a motion to reopen? He can bring a motion to reopen. Would it be time-barred at that point because it wasn't filed within 90 days of the removal? As you described it, it doesn't sound to me that it would be because he could get equitable tolling. From your description, it sounds like he acted diligently. So that's my question. If you're proceeding through, whether it's state or federal post-conviction remedies, to set aside your conviction, then in your view you've established due diligence, even though you haven't filed a motion within the 90-day time period to reopen. I think you could make that argument, and I think the Board has granted some of those. What I'm concerned about is this notion of filing a protective motion for reopening right after, while you're pursuing your other proceedings. That's not this case. But it seems to me if we, the import of this case, if we say that you have to have filed your motion for reopen within 90 days, even though you don't know the facts yet, then people are going to be filing these protective motions to reopen. And that's why I asked the question. I get what you're saying, Your Honor, and I don't think that's what the Board has done here or in any other case that I'm aware of. They're not requiring that, like you say, that sort of protective motion. The petitioners that I know of do get post-conviction relief, and then they come to the Board and say, look, I acted promptly to get post-conviction relief. It may be out of time now, but you should reopen it so it's fonte. And in several of those cases, in fact, I think a lot of those cases, the Board has granted them. Counsel, opposing counsel argues quite strenuously that in 2001 a mistake was made. What's your position on that? I disagree. In 2001, the proceeding was procedurally and substantively correct. That applies to the petitioner's choice not to engage counsel. The immigration judge asked him several times, actually gave him one continuance to find one, and then offered another one, and the petitioner said, no, he didn't want it. That was a knowing waiver. And the same with the appeals waiver. The immigration judge, he unequivocally said, I do not want to appeal. The judge said. What about the prior convictions? That's the issue because we've read the transcript. So what about the prior convictions? Was he ineligible for cancellation of removal? In 2001, because the statute was, I think as the petitioner described it in the brief, as a wobbler, but that would be a conviction that would make an alien. Potentially eligible. Not potentially. Potentially ineligible, Your Honor, is the point, was that this was an aggravated felony. Well, I think her point is potentially. Yeah. The immigration judge looked at it and said, no, this would make you ineligible. But wasn't that the question? Was that inappropriate advice to him? No, Your Honor, it wasn't. Why not? Because I think it was substantively right at the time. I think aggravated felony law has developed considerably since then, but at the time, the immigration judge, with that conviction sheet in front of him, with the one conviction for the possession of meth and the other conviction for the transportation, he could reasonably have concluded, no, you're not going to be eligible for cancellation. Yes, but couldn't he have said, if he had said you're potentially eligible, would that have been a correct statement in 2001? I don't think we know. Why don't we know that? It's a wobbler at the time. Well, it was a wobbler at the time, but the conviction document itself said that it was a methamphetamine conviction for the possession, which would have made him ineligible. Okay, so back up a bit. I think I've got an assumption that's incorrect. What did he know? What did the IJ have? He had the conviction documents that the Department of Homeland Security provided, which was the abstract of judgment and the complaint. Okay, and do you have the excerpt site for me? Sure. Thank you. I just want to take a look and make sure that I'm understanding that correctly. Let me make sure I've got this. Sure. The complaint is at 588 in the record, and I think the abstract of judgment is just ahead of that. Did you say 588? 588, yes. Okay, so count one. Did Wilfley and Laughley possess a controlled substance? Methamphetamine. Methamphetamine. Right. And additionally, although it wasn't before the IJ, it was later put in front of the board, the plea colloquy from this criminal conviction from the state court, in which he was asked point blank, essentially read this count, methamphetamine, and he pleaded guilty to the offense. But I'm still back to the original question. At the time of the IJ's proceeding in 2001, was this a conviction that made him ineligible for cancellation of removal? I don't believe the possession alone. Right. It's the underlying count there that records the prior of the transportation. Right. No, the underlying count records. Let's put them both. Does transportation make you ineligible for cancellation of removal? It would be an aggravated felony. In 2001. 2001. Okay, that's what I was asking, and not a wobbler, but it's just. No, I think at the time it would have made him ineligible because it would qualify as an ag felony trafficking conviction at the time, which is one of the ag felonies. Is that different today? I'm not sure, Your Honor. I didn't analyze it under the change in law. Partially, I might add, because if Petitioner thought that was incorrect, then the time for him to challenge it was then, either through appeal or through a motion to appeal. It's a different question, though. That's a different question. I take it your opponent's argument is that had he been told that he was eligible for cancellation of removal, he might have appealed. And it was the IJ's advice that he was not eligible that led him not to appeal. That's the argument. That's the argument. Right. I don't know that, again, if Petitioner thought something was wrong or had reason to think something was wrong. This is quite different, and I want to be fair. Her position, opposing counsel's position, is that the IJ misinformed him. So he didn't have a reason to suspect that there was a problem. He was told this makes you ineligible. And he said, well, if I'm ineligible, I might as well go back to Mexico and pursue any rights from there as opposed to fighting it and going up to the BIA. It's not an insignificant point. That's why we're putting you on the spot to really try to nail that down. Yes, Your Honor. I understand. My rebuttal to that, though, is that he has to do something in order to start this tolling period. Now we're talking about diligence. That's different. Right. So let's get back to your second dead-other point. If the conviction were later set aside for actual innocence, would that affect your argument? No, Your Honor. It doesn't change the fact that the 2001 removal was procedurally regular, right? Procedurally what? Forgive me. Regular. Oh, regular. OK. He can't come along later. I mean, his conviction has been vacated. That's true. But he's not being removed on his prior order. That order was already executed, Your Honor. This is in the context of a motion to reopen, which means he must come within the rubric of the motion to reopen. He has to show one of the regulatory exceptions, which he can't. Or he has to show equitable tolling, which, again, he can't because he doesn't have the triggering event, the fraud, the deception, the error in 2001, and he doesn't have the diligence starting from the error. Well, opposing counsel thinks that he does have an error in 2001. It sounds like we're not really entirely clear on that point. But you're relying on prong two, which is that there wasn't diligence. Is that a fair characterization? Yes, Your Honor. That six-year gap is determinative in this case for equitable tolling. He can't move that 90-day window without showing that he was acting diligently during that time. And diligence may have been engaging a lawyer, appealing, right? But part of the argument here is that he didn't knowingly waive appeal. But it seems that he did because he never appealed for Mexico. I mean, the argument that has been made is that, oh, he wanted to appeal for Mexico. Well, he didn't. I mean, it might be a different case if he had appealed and the board said, oh, no, you waived it. Well, then, OK, maybe we've got a question. But that never happened. He didn't appeal for Mexico. Instead, he just came back to the United States demonstrating not diligence. And then he laid low until he was discovered by Department of Homeland Security. And that's when he actually started acting. That's when he went and got post-conviction relief and started filing the motions to reopen. But that was very, very late and beyond the period for the 90 days. Your Honors, if there are no more questions, I just might refer to one issue that was raised in Petitioner's Brief that suggested perhaps there might be a constitutional problem with not requiring the board to grant a motion to reopen in a situation like this. And I just might point to the Act, which provides that judicial review of the questions of law, in fact, including constitutional interpretations, must take place within the rubric of the Act. So we can't step outside of the four regulatory exceptions to motions to reopen and equitable tolling to fashion some new solution here. I do have one additional question for you.  The Supreme Court has granted cert in the Mata case, in which it may or may not take up the issue of how equitable tolling affects our jurisdiction to hear motions to reopen. Is there any reason for us to wait until that decision comes down before we address this case? I think that case would probably only – if the Court says that equitable tolling doesn't apply, then it's not going to help Petitioner. And if it does – if it says it does apply, I think it would comport with this circuit's law. Exactly. That's my first cut at it, but I want to – That's my first cut at it as well, Your Honor. I don't think it's going to alter the outcome here, because – like, it might alter the outcome if there was a tolling period, because the Supreme Court might say, oh, you can't do it anyways. But because there was no diligence, there was – you know, he lacks that essential element. Right. So if – but to put it differently, if the Supreme Court agrees with the Fifth Circuit, there isn't any equitable tolling. Right. If the Supreme Court disagrees with the Fifth Circuit, then we have to confront the issue of equitable tolling. So either way, if we – if we truck through on our law, we will have afforded appropriate review in this case. Your Honor. If there are no other questions, thank you very much. Mr. Brown, could you put one more minute on the clock, please? Thank you, Your Honor. With respect to counsel's point that the law in 2001 reported that it was an aggravated felony, we would again contest this, because the law in 2001, neither the possession nor the transportation were an aggravated felony. It was a divisible statute, as this Court had recognized in April of 2001, six months prior in Rivera-Sanchez. Moreover – What's that – tell me what statute was divisible. The statute for the transportation, which is 11379. Moreover, even if we take it to be true, it's not deportable simply because there's no specific controlled substance recognized, as this Court has said in Ruiz-Fidal, as well as the BIA has held for 60 years in Matter of Polis, that if there is no specific controlled substance, even with the possession for sale, then it's not deportable, point blank. So it wasn't even deportable, you know, for 60 years of this – of the BIA precedent. Moreover, we would like to assert that he did exercise due diligence upon the date of the discovery. He was a pro se litigant, and we should afford him, you know, every opportunity to question the immigration judge's ruling in 2001. Thank you very much, Your Honors. Thank you. Thank you. We appreciate arguments by both counsel. Thank you.
judges: Burgess, Christen, Hurwitz